IN UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES | ) | CASE NO. 5:07CR524 |
| | ) | |
| Plaintiff, | ) | JUDGE KATHLEEN O'MALLEY |
| | ) | |
| -vs- | ) | **DEFENDANT'S SENTENCING** |
| | ) | **BRIEF** |
| EVAN M. STERN | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

NOW COMES the Defendant, EVAN M. STERN, and respectfully moves this Honorable

Court to consider the following information contained in the attached Sentencing Brief in

determining the final judgment to be imposed upon the Defendant.

Respectfully submitted,


/s/ James M. Campbell
James M. Campbell, #0004733
Attorney for Evan M. Stern
2717 Manchester Road
Akron, OH 44319
(330) 745-2422


**CERTIFICATE OF SERVICE**

A copy of the foregoing was filed electronically on this 14th day of January, 2008.

/s/ James M. Campbell
James M. Campbell, #0004733
Attorney for Evan M. Stern

<center>**BRIEF IN SUPPORT**</center>

I.    **STATEMENT OF THE CASE**

        On October 30, 2007, the Defendant, Evan M. Stern, pursuant to a signed plea agreement, plead guilty by way of an Information charging him with one count of the knowing possession of visual depictions that had been transported in interstate commerce depicting persons under the age of eighteen (18) engaged in sexually explicit conduct, i.e., depicting "child pornography", in violation of Title 18, Sections 2252 (a)(4) and (b)(2) of the United States Code.

        Sentencing is scheduled for January 18, 2008.

II.   **FACTUAL BACKGROUND OF CASE**

        In 2004, the Pittsburgh Division of the FBI and the Pennsylvania Police Department were jointly investigating File Servers dedicated to distributing images involving child pornography and their subscribers.

        Pursuant to their investigation the agencies determined that one of the subscribers was the Defendant, Evan M. Stern.

        On October 18, 2005, a special agent from the FBI and a Summit County Sheriff went to the Defendant's residence in Kent, Ohio.  The two law enforcement officers explained why they had come to his residence.  The Defendant, without hesitation, readily admitted his unlawful conduct and voluntarily surrendered his computer to the officers as they had requested. The Defendant told the officers how to access the unlawful files on his computer, stated to them that he wanted to cooperate, and further acknowledged that he had a problem. (See attached Exhibit 1).

1

The Defendant's computer and hard drive have remained in the sole and exclusive possession of the FBI since October 18, 2005.

On August 25, 2006, a forensic analysis of the Defendant's computer was completed and a number of images were identified as images of child pornography with known child victims.

In July 2007, the undersigned counsel was contacted by AUSA Robert Becker concerning the Defendant, Evan M. Stern. The AUSA provided this counsel with all pertinent discovery and discussed the nature of the pictures. (See attached Exhibit 2.) The Defendant admitted his guilt and entered into a plea agreement which set out all of the facts and details of the offense known by Defendant and his counsel at the time of his plea.

## III.  PERSONAL CHARACTERISTICS OF EVAN M. STERN

### A.  CURRENT

The Defendant, Evan M. Stern, is a twenty-four (24) year old man (See PSI paragraph 43). In December 2006, he received a Bachelor's Degree in Computer Science from Kent Sate University and graduated with a cumulative grade point average of 3.106 (See PSI paragraph 46). In June 2007, he began working for WMS, Industries in what he describes as his "dream job", as a computer games software designer (see PSI paragraph 48). His net income per month from his job with WMS, Industries is $3,500.00, which computes to an annual net income of $42,000.00 per year (See PSI paragraph 50). He moved to Chicago, Illinois in June 2007 to begin his career with WMS, Industries and lives in a two bedroom apartment with a co-worker named Michael Irby, II (See PSI paragraph 42). Evan is currently working with Irby and others in two (2) other business

2

ventures called GRB (Giant Revolving Brain which creates educational video games for schools) and Mind Case Studios (which creates commercial video games for the PC and the XBox 360 game console). (See letter of Michael J. Irby, II attached hereto as Exhibit 3.)

**B. PAST**

The Defendant, Evan M. Stern, is the first child born to Kenneth and Sharon Stern. He has two younger sisters, Rachel Stern (age 22) and Rebecca Stern (age 20) (see PSI paragraph 39).

His childhood years were described as being relatively normal. However, when he became a teenager Evan's personality began to change. He became sullen, withdrawn, dark, black, isolated, introverted, reclusive, short-tempered, irresponsible, uncaring, and angry as described by his family members. (See letters of Rebecca Stern, Kenneth S. Stern, Sharon Griffith Stern, M.D., and Frank Griffith attached hereto as Exhibits 4, 5, 6, 7.)

Unbeknownst to everyone but Evan, it was during his teenage years that he began using the computer and became addicted to adult pornography. His fascination/addiction to pornography led him to begin looking at and downloading what is commonly referred to as child pornography. (See PSI paragraph 15). Evan was ashamed of his addiction and tried to quit but he kept relapsing as he did not know where to turn for help. (See PSI paragraph 15).

As Evan entered college, his mother recognized that his isolation was at its worst. She knew something was wrong with their son but was unable to figure out the root of his problem. (See letter of Sharon Griffith Stern attached hereto as Exhibit 6.)

3

On October 18, 2005, the root of Evan's problems was no longer his own personal deep dark secret. On this day (as previously set forth in item II of this brief) two law enforcement officers showed up at his apartment in Kent and confiscated his computer. Evan was relieved that the officers had come to his apartment because by taking his computer he felt that he was finally rid of the pornography and was finally able to seek help. (See PSI paragraph 16.)

Evan immediately began to reach out for help. He called his parents and told them what had just occurred. He told his fiancé, who gave him back his ring and broke up with him. He then packed a suitcase and moved home (See PSI paragraph 17). He reached out to other people who were close to him and told them of his deep, dark secret. (See letters of Sharon Griffith Stern, Rachel Stern, Walter Pechenuk (lecturer at Kent State University), Mark Pestka, Judith Stern, and Frank Griffith attached hereto as Exhibits 6, 8, 9, 10, 11, and 7.) He wrote to his aunt and told her what he had done and that he was relieved that he had been caught because he had been too ashamed to tell anyone about what he had been doing and how he could no longer hide his problem. (See letter of Judith Stern attached hereto as Exhibit 11.)

Instead of wallowing in self pity, Evan began to seek help to pull himself out of his deep, dark hole. He immediately called and voluntarily began counseling with Dr. Brian Tindall (Dr. Tindall will be present to testify at the sentencing on January 18, 2008). He had weekly counseling sessions with Dr. Tindall for the next one and a half years. Dr. Tindall then reduced Evan's counseling sessions and saw Evan on a monthly basis. (See PSI paragraph 17.) Dr. Tindall will testify about the issues that he and Evan

worked through during their counseling sessions and the progress that Evan has made in addressing his addiction over the past two years.

All during his counseling Evan still attended Kent State University as a full-time student. He lived at home with his parents in Doylestown, Ohio and commuted to school. He was up front about what was happening in his life with his friends and professors. (See letters of Mark Pestka and Walter Pechenuk attached hereto as Exhibits 10 and 9.)

Everyone began to see a change in Evan. His previously described dark personality was beginning to change for the positive. Evan started to come out of his shell and his depression.

Evan, as well as others, realizes that he has an addiction and will continue to need counseling in the future. While in Chicago he has begun counseling with Allan T. Peterson, PsyD, MDiv on a regular basis since August 22, 2007. He has also been waiting for over two months to meet with Dr. Richard Campbell (a sexual addiction specialist at Northwestern University—appointment date January 14, 2008). He understands his addiction and has voluntarily continued with counseling in order to prevent any possibility of a relapse. (See PSI paragraph 18.)

Evan has never made excuses for his conduct. He recognizes the wrongfulness of his conduct and has developed significant insight as to how his conduct caused pain to the children whose pictures that he looked at on the internet and their families. He is genuinely remorseful for his conduct. (See PSI paragraph 19.) (See letter of Allan T. Peterson attached hereto as Exhibit 12.)

Evan has been very open about his current situation with his girlfriend, roommate, friends, co-workers and employers. (See letters of Megan E. Allardice, Claude-Richard

5

Lalanne, Mr. and Mrs. Rex Snyder, Michael J. Irby II, Mark Pestka, Jacob Ze'eu Barnett

Goldsmith, and Steve Yeoman attached hereto as Exhibits 13, 14, 15, 3, 10, 16 and 17.)

By all accounts, Evan M. Stern has become a productive person in society and his

post offense conduct indicates that he will not return to criminal behavior and that he is

not a danger to society.

## IV.  STATEMENT OF LAW

### A.  SENTENCING AND THE GUIDELINES

On December 10, 2007 the Supreme Court of the United States decided the case

of *Gall v. United States*, 552 U.S. ___, 2007 WL 4292116 (December 10, 2007).

The Court on page eleven of its decision set forth how a district court should

conduct a sentencing proceeding.  The court stated the following:

> As we explained in *Rita*, [*Rita v. United States*, 551
> U.S.___] a district court should begin all sentencing
> proceedings by correctly calculating the applicable
> Guidelines range.  See 551 U.S., at ___.  As a
> matter of administration and to secure nationwide
> consistency, the Guidelines should be the starting
> point and the initial benchmark.  The Guidelines are
> not the only consideration, however.  Accordingly,
> after giving both parties an opportunity to argue for
> whatever sentence they deem appropriate, the
> district judge should then consider all of the §
> 3553(a) factors to determine whether he supports
> the sentence requested by a party.  In so doing, he
> may not presume that the Guidelines range is
> reasonable.  See *id.*, at ___.  He must make an
> individualized assessment based on the facts
> presented.  If he decides that an outside Guidelines
> sentence is warranted, he must consider the extent
> of the deviation and ensure that the justification is
> sufficiently compelling to support the degree of the
> variance.  We find it uncontroversial that a major
> departure should be supported by a more significant
> justification than a minor one.  After settling on the
> appropriate sentence, he must adequately explain

the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

In footnote six of the *Gall* decision, the Court set out the §3553(a) factors that the

district court should consider:

> Section 3553(a) lists seven factors that a sentencing court must consider. The first factor is a broad command to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U. S. C. §3553(a)(1). The second factor requires the consideration of the general purposes of sentencing, including:
> "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> "(B) to afford adequate deterrence to criminal conduct;
> "(C) to protect the public from further crimes of the defendant; and
> "(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." §3553(a)(2).
> The third factor pertains to "the kinds of sentences available," §3553(a)(3); the fourth to the Sentencing Guidelines; the fifth to any relevant policy statement issued by the Sentencing Commission; the sixth to "the need to avoid unwarranted sentence disparities, §3553(a)(6); and the seventh to "the need to provide restitution to any victim," §3553(a)(7). Preceding this list is a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing described in the second factor. §3553(a)(2000 ed., Supp. V). The fact that §3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.

The Court stated on page 20 of its decision as follows:

Guidelines are not mandatory, and thus the "range of choice dictated by the facts of the case" is significantly broadened. Moreover, the Guidelines are only one of the factors to consider when imposing sentence, and §3553(a)(3) directs the judge to consider sentences other than imprisonment.

The Court further stated on page 13 of its decision that:

It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

With regard to custodial sentences verses probationary sentences the Court stated the following at pages 9 and 10 of its decision:

We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. See *United States v. Knights,* 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting *Griffin v. Wisconsin,* 483 U.S. 868, 874 (1997))). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG §5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court.

V.     **APPLICATION OF FACTS AND LAW**

   **A.  CALCULATE THE APPLICABLE GUIDELINE RANGE**

        The first thing that this Court must do is to calculate the applicable Guideline

range.

        The Defendant draws the Court's attention to the plea agreement that the parties

entered into on October 30, 2007.  In paragraph 8 of the plea agreement, the parties set

forth their guideline computation.  The agreement anticipates that the Defendant will be

in Criminal History 1 with a final adjusted offense level at 23 if the Court grants him the

full three (3) level departure for acceptance of responsibility.

        The agreement also set forth in paragraph 15 subsections (a), (b), (c), and (d) the

factual basis for the Defendant's guilty plea.  In particular, paragraph 15(c) sets forth a

description of pictures that were found on the Defendant's computer that the Assistant

United States Attorney provided to the Defendant's counsel by way of discovery.  (See

attached Exhibit 2.)

        The presentence writer, over the Defendant's objection, has included the last three

(3) sentences in paragraph 8 of his presentence report that increase the Defendant's

offense level by four (4) points.  The inclusion of this information was never

contemplated by the parties nor was it ever disclosed to the Defendant or his counsel in

any discussions about the images.  The Defendant argues that this additional and

undisclosed information be stricken from the presentence report.

        The Defendant submits that the correct applicable Guideline range in this case is

as follows: Criminal History Category I, adjusted offense level at 23, within a sentencing

range of 46 to 57 months.

## B.  CONSIDERATION OF THE §3553(a) FACTORS

The second step that the Court should take in determining Evan Stern's appropriate sentence is to consider the §3553(a) factors.

### 1.  18 U. S. C. §3553(a)(1) - To consider the nature and circumstance of the offense and the history and characteristics of the Defendant.

With regard to the nature and circumstances of the offense, the Defendant does not deny that the possession of child pornography is a serous offense.  He has always stated that he has only looked at child pornography on his computer for his own personal pleasure.  He submits that he never possessed the material in order to entice a child; that he never produced any of the images; that he never had any improper conduct with an actual child; and, that he never molested any child nor had he ever had any thoughts of ever molesting a child or having any improper contact with a child.  He submits that he is extremely regretful for the pain this has caused to the children and their families whose pictures he looked at on the internet.  (See PSI paragraph 19.)

The Defendant, Evan M. Stern, was 22 years old when his computer was confiscated on October 15, 2005.  Since Evan has not been charged with any crimes since then, it is fair to presume that all of his illegal behavior occurred when he was between the ages of 14 (when he began to look at pornography) and 22 (when his computer was confiscated).  To characterize his conduct as being immature, impetuous, and ill considered would not be a stretch.

These are some of the same type of characteristics of the Defendant that the district court found in the *Gall* case to warrant a downward variance.  The Supreme Court in *Gall* stated that "it was not unreasonable for the district judge to review Gall's immaturity at the time of the his offense as a mitigating factor, and his later behavior as a

10

sign that he had matured and would not engage in such impetuous and ill considered conduct in the future." *Gall* at ___ (slip op., at 20).

The Defendant argues that looking at his immaturity at the time that the offense occurred is significantly relevant. The Supreme Court in *Gall* took special note of the District Court Judge's discussion about immaturity. The court stated:

> The District Judge appended a long footnote to his discussion of Gall's immaturity. The footnote includes an excerpt from our opinion in *Roper v. Simmons*, 543 U. S. 551, 569 (2005), which quotes a study stating that a lack of maturity and an undeveloped sense of responsibility are qualities that "'often result in impetuous and ill considered actions.'" The District Judge clearly stated the relevance of these studies in the opening and closing sentences of the footnote:
> "Immaturity at the time of the offense conduct is not an inconsequential consideration. Recent studies on the development of the human brain conclude that human brain development may not become complete until the age of twenty-five. . . [T]he recent [National Institute of Health] report confirms that there is no bold line demarcating at what age a person reaches full maturity. While age does not excuse behavior, a sentencing court should account for age when inquiring into the conduct of a Defendant." *Id.* at ___ (slip op., at 19).

The Defendant also requests that this court look into the similarities between Evan M. Stern and Brian Gall. (See table next page).

11

|  | Evan Stern | Brian Gall |
|---|---|---|
| Age at time of offense. | 22 | 21 |
| Year in college at time of offense. | Second year at Kent State. | Second year at University of Iowa. |
| Illegal activity after offense. | None. | None. |
| College graduation. | Two years after offense. | Two years after offense. |
| Immature at time of illegal conduct. | Yes. | Yes. |
| Self rehabilitation. | Yes. | Yes. |
| Employment after illegal conduct. | Yes. | Yes. |
| Admission of guilt and cooperation. | Yes. | Yes. |
| Filing of criminal charges by the government. | Two years after conduct. | Three and half years after conduct. |
| Income form employment after ceasing illegal conduct. | $3,500 net per month. | $2,500 profit per month. |
| Prior criminal history. | None. | Not significant. |
| Sentencing range. | 46-57 months. | 30-37 months. |
| Letters of reference regarding character and work ethic | Numerous. | Small flood |
| Profit from illegal conduct. | None. | Yes. |

Rarely has Defendant's counsel ever found such similarities in two completely separate cases.  The Defendant submits that the factors about him set forth above and others set for in Section III of this brief should be considered by this Court when it looks into his character.

**2.  18 U. S. C. §3553(a)(2) - The need for the sentence imposed.**

    **(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**
    **(B) To afford adequate deterrence to criminal conduct;**
    **(C) To protect the public from further crimes of the Defendant; and,**
    **(D) To provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

The Defendant submits that the proper sentence in this matter would be for the Court to impose a sentence that is sufficient but not greater than necessary to comply

12

with the purposes of sentencing.  The Defendant respectfully submits that the proper sentence in this matter would be a sentence of probation or a sentence of home detention with work release or a sentence of community detention with work release.

The Guidelines call for a prison term of either 46 to 57 months or 70 to 87 months.  The Defendant submits that a sentence below these ranges is sufficient to provide just punishment and respect for the law.  The Defendant reminds the Court that this is his first ever criminal offense.

There is no doubt in anyone's mind that the possession of child pornography is a serious offense.  Is this a more serous offense than dealing/selling drugs?  The unique facts of Evan's case are very similar to the unique facts in Gall's case.  In that case the Supreme Court found:

> Moreover, the unique facts of Gall's situation
> provide support for the District Judge's conclusion
> that, in Gall's case, "a sentence of imprisonment
> may work to promote not respect, but derision, of
> the law if the law is viewed as merely a means to
> dispense harsh punishment without taking into
> account the real conduct and circumstances
> involved in sentencing." *Id.,* at (slip op., at 15).

The professional with the most insight into Evan M. Stern is Brian W. Tindall, Ph D., LPCC, LIMFT.  Dr. Tindall will testify as to the progress that Evan has made during the two plus years that he has counseled with him.  He will also testify that he has little if any concern that Evan will ever be a threat to the public.  He will testify that Evan is a low risk for re-offending and is a good candidate for continued counseling.

In fact, Evan has been around his uncle's children as well as other children and there has never been any suggestion of improper conduct. (See letter of Frank Griffith attached hereto as Exhibit 7.)

Evan's motivation and progress in treatment have demonstrated that he is of no risk to the public; therefore, a prison term is not necessary to accomplish the sentencing objections.

Lastly, Dr. Tindall will testify that any term of imprisonment will seriously harm Evan's progress in treatment. He will state that any prison term without probation and/or work release will significantly decrease Evan's chances for a long term successful recovery.

Evan reminds this Court that he voluntarily sought to rehabilitate himself. When he began seeing Dr. Tindall in October of 2005, his counseling was not undertaken at the direction of, or under supervision by any court but on his own initiative. The Supreme Court in *Gall*, found at page 21 that:

> This also lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public form his future criminal acts. See 18 U. S. C. §§3553(a)(2)(B),(C).

### 3.   18 U. S. C. §3553(a)(3) - The kinds of sentences available.

The Defendant submits that pursuant to the decision by the United States Supreme Court in *Gall*, a sentence of probation is just as available to him as it was for Brian Gall.

The Court cited in footnote four of its opinion the following:

> See also Advisory Council of Judges of National Council on Crime and Delinquency, Guides for

14

Sentencing 13-14 (1957) (Probation is not granted out of a spirit of leniency....As the Wickersham Commission said, probation is not merely 'letting an offender off easily'"); 1 N. Cohen, The Law of Probation and Parole §7:9 (2d ed. 1999) ("[T]he probation or parole conditions imposed on an individual can have a significant impact on both that person and society....Often these conditions comprehensively regulate significant facets of their day-to-day lives....They may become subject to frequent searches by government officials, as well as to mandatory counseling sessions with a caseworker or psychotherapist").

A sentence of probation can therefore be as penal as a sentence of incarceration. This Court has the right to impose certain restrictions on Evan Stern to make sure that he does not relapse into his prior illegal conduct. The Defendant has already consented to be bound by a certain number of restrictions that are set forth in paragraph 17 of his plea agreement.

Evan is willing to continue with his counseling and has sought and begun counseling with certain highly qualified professionals in the Chicago area. He is highly motivated in overcoming his addiction and understands the benefit of continuing his counseling.

He has the strong support of his family and friends as evidenced by the number of letters that have been attached to this brief. By placing him on probation, he will continue to have this support group behind him. If he is sent to prison, although his family will still support him, they will not be able to stay involved with his progress.

**4.  18 U. S. C. §3553(a)(4) - The kinds of sentence and the sentencing range.**

Under the Guidelines, the Defendant is subject to a sentence of either 46-57 months under the terms of the plea agreement or 70-87 months as set forth in the plea agreement.

Under the Guidelines, because the applicable guideline sentence is in zone D of the sentencing table, the Defendant is not eligible for probation.  (See PSI paragraph 60.)

**5.  18 U. S. C. §3553(a)(5) - The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

The Defendant submits that there are no other co-defendants in his case.

There is a similar case in this District with a Defendant with a similar record who was found guilty of similar conduct.  In the case of *United States of America v. Camiscione*, Case No. 5:04CR594, the Defendant plead guilty to possession of child pornography, in violation of 18 U. S. C. §2252 (a)(4) and (b)(2) (the same charges as Evan M. Stern).  The Court found Camiscione's offense level to be 18 and his criminal history category to be I.  Thus the Guidelines called for a sentence range of 27-33 months.  The trial court sentenced Camiscione into the custody of the United States Marshal's Office for the remainder of the day followed by supervised release for a period of three years.  (See attached Exhibit 18.)  (Note the district court's sentence was vacated and the case was remanded to district court for resentencing).  Camiscione is scheduled to be resentenced on February 6, 2008.

16

The district court judge in that case could resentence the Defendant to the exact same sentence that she gave him in the previous case in light of the *Gall* decision. If the district court does this, then there would clearly be no sentence disparity if this court were to grant the Defendant a variance and sentence him to probation. In fact, sentencing Evan to probation would make the cases more consistent within the district.

### 6. 18 U. S. C. §3553(a)(7) - The need to provide restitution to any victims of the offense.

According to the presentence report restitution is not an issue in this case. (See PSI paragraph 65.)

## VI. CONCLUSION

For all of the reasons set forth in the foregoing Sentencing Brief, the Defendant, Evan M. Stern, respectfully requests that this Court grant him a variance from the applicable Guideline sentence and impose upon him the following sentence:

1. A sentence of probation;

-or-

2. A sentence of house detention with work release;

-or-

3. A sentence of community detention with work release;

-or-

17

4. If none of the above are found to be appropriate, then a minimal sentence below the advisory guideline range.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ James M. Campbell
James M. Campbell, #0004733
Attorney for Evan M. Stern
2717 Manchester Road
Akron, OH 44319

</div>

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically on this 14th day of January, 2008.

<div style="margin-left: 40%;">

/s/ James M. Campbell
James M. Campbell, #0004733
Attorney for Evan M. Stern

</div>