## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.5:07-CR-00524** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **EVAN M. STERN** | : | **MEMORANDUM & ORDER** |
| **Defendant.** | : | |

Before the Court is Defendant Evan M. Stern, who previously pled guilty to possession of child pornography in violation of 18 U.S.C. § 2252(a)(4), a conviction with respect to which the Government and Stern did not reach a plea agreement.  In light of the unusual circumstances underlying this conviction, the Court conducted a lengthy initial sentencing hearing during which witnesses testified extensively about the particular facts of this case and about the Defendant himself.  The Court did not rule at that hearing, but rather took the matter under advisement to carefully weigh the arguments advanced by both the Government and Stern.[1]

The United States Sentencing Commission's Advisory Sentencing Guidelines ("Guidelines") suggest that a defendant with Stern's offense level and criminal history should be sentenced to a term of imprisonment of between 46 and 57 months.  The Court, however, must independently consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to determine whether such a sentence is appropriate in this case.  Indeed, the Court is forbidden from assuming that the Guidelines are reasonable as specifically applied to Stern.  While the Government argues that 46 – 57 months

---

[1]For a variety of reasons, including conflicts impacting both the Court and the parties, sentencing has been delayed a number of times.

represents a just sentence, Stern urges this Court to deviate from the guidelines based on the §

3553(a) factors. (Doc. 12.) Stern, in fact, has asked this Court not to impose any term of

imprisonment whatsoever. (*Id.*)

As an initial matter, the Court wishes to make clear that it has consistently imposed harsh

sentences upon defendants who possess child pornography. Indeed, the Court rarely has disagreed

with the Government's recommended sentences in cases involving this crime – and, when it has, it

has only deviated marginally from the Government's recommended term. Yet, as more fully

explained below, here the Court is faced with an extraordinary and unique case that compels a

different result. While any reading of this sentence as a harbinger of future leniency in the absence

of such extraordinary circumstances would be mistaken, the Court finds that the sentence the

Government urges is more than reasonably necessary to serve all of the sentencing considerations

by which this Court must be guided. The Court does not, however, find it appropriate to deviate as

far from the Guidelines as is urged by Stern. Accordingly, Stern shall be sentenced to the custody

of the Bureau of Prisons for a term of 12 months and 1 day.[2]

**BACKGROUND**

In 2004, the Pittsburgh Division of the FBI and the Pennsylvania Police Department were

jointly investigating file servers dedicated to distributing images involving child pornography and

their subscribers. During the course of this investigation, the agencies identified numerous criminal

users of child pornography, including Stern, then a student at Kent State.

On October 18, 2005, the FBI went to Stern's home and explained that Stern had been

identified as a viewer of child pornography. Stern then admitted to possession of this material and

---

[2] This and the other aspects of Stern's sentence, including a substantial term of
Supervised Release, will be confirmed in the Court's final judgment entry.

-2-

surrendered his computer.  At that time, he explained how to access the unlawful files on his computer and stated that he wished to cooperate.  The FBI spent nearly a year analyzing the contents of Stern's computer.  On August 25, 2006, the FBI completed their forensic analysis and identified in excess of 1000 images as child pornography.  Slightly over a year later, on October 15, 2007, the Government charged Stern in a one count information with possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4).

**GOVERNING LAW**

### A. The Three-Step Sentencing Procedure

Criminal sentencing is a three-step procedure.  *See United States v. Baird*, No. 8:07-CR-204, 2008 U.S. Dist. LEXIS 2338, at *10-14 (D. Neb. Jan. 11, 2008) (Bataillon, C.J.).[3]  A district court must begin by calculating the sentence recommended by the United States Sentencing Commission. *Id.* at 10; *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007) ("[A sentencing court must] normally begin by considering the presentence report and its interpretation of the Guidelines.").  To make this calculation, a court determines both the classification of the crime for which the defendant has been convicted and the defendant's criminal history.  *See United States v. Boyd*, No. 3:07-CR-3, 2008 U.S. Dist. LEXIS 94565, at *43-48 (E.D. Tenn. Nov. 18, 2008).

---

[3] Other district courts have described this as a two-step process or a four-step process. *See, e.g.*, *Boyd*, 2008 U.S. Dist. LEXIS 94565.  These are equally valid ways of characterizing a district court's obligations to the extent that they indicate a court must both properly apply all considerations mandated by the United States Sentencing Commission and independently apply the factors detailed in 18 U.S.C. § 3553(a).  *See Rita*, 127 S. Ct. 2456, 2465 (2007).  This Court, however, consistently discusses it as a three step process, as do various other sentencing courts within the Northern District of Ohio.  *See, e.g.*, *United States v. Collington*, No. 5:04-cr-00587 (N.D. Ohio Aug 1, 2005), *aff'd* 461 F.3d 805, 807 (6th Cir. 2006); *Stubbs v. United States*, No. 3:97-CR-765, 2008 U.S. Dist. LEXIS 67038, at *20-21 (N.D. Ohio Aug. 14, 2008).

Next, a sentencing court must determine whether the particular facts of the case justify a departure - either upward or downward - under the Guidelines themselves. *Baird*, 2008 U.S. Dist. LEXIS 2338, at *12.  For example, a court may depart from the suggested Guidelines range upon motion of the Government, in recognition of substantial assistance to the government, *see* U.S.S.G. 5K1.0, and the Guidelines instruct a court to consider "prior sentences not used in computing criminal history [and] prior similar adult criminal conduct not resulting in a criminal conviction," *Boyd*, 2008 U.S. Dist. LEXIS 94565, at *48-49 (citation omitted).  *But cf. Baird*, 2008 U.S. Dist. LEXIS 2338, at *12 ("The PROTECT Act of 2003 eliminated judicial departures [in sexual exploitation cases] for all reasons except those specifically authorized in Chapter Five, Part K, of the Guidelines Manual." (citation omitted)).  If a court finds that an adjustment is appropriate under the Guidelines, the court then recalculates the defendant's recommended sentence based on that adjustment.  *See Boyd*, 2008 U.S. Dist. LEXIS 94565, at *54 - 59.

Finally, a sentencing court must independently evaluate each of the factors in 18 U.S.C. § 3553(a), which details the considerations that a district court must weigh before sentencing a criminal defendant.  Although the Guidelines form a starting point in the district court's analysis under 18 U.S.C. § 3553(a), a district court may <u>not</u> presume that the sentence suggested by the Guidelines is appropriate for an individual criminal defendant.  *United States v. Ross*, 501 F.3d 851, 853 (7th Cir. 2007) ("[T]he presumption of reasonableness applicable when reviewing a within guidelines sentence on appeal does not carry over to the choice of sentence by the district court." (citing *Rita*, 127 S. Ct. at 2465)).  A district court may "hear arguments by prosecution or defense that the Guidelines sentence should not apply." *Rita*, 127 S. Ct. at 2465.  In this way, a "sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal

sentencing procedure." *Id*. (citation omitted).  Ultimately, however, a court must exercise its independent judgment in sentencing a defendant.  *See id*.

### B. The Sentencing Court's Discretion

Although a sentencing court must apply the above procedure rigorously, a court has considerable discretion when determining the proper sentence for a criminal defendant.  *Gall v. United States*, 128 S. Ct. 586, 595 (2007); *United States v. Prisel*, No. 07-3281, 2008 U.S. App. LEXIS 23648, at *28-30 (6th Cir. Nov. 13, 2008) (affirming a sentence indicating one week imprisonment for possession of child pornography); *United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (per curiam) ("Even if we are certain that we would have imposed a different sentence had we worn the district judge's robe, we can't reverse on that basis."); *United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc) ("[D]istrict courts have considerable discretion in [sentencing] and thus deserve the benefit of the doubt when we review their sentences and the reasons given for them.").  Although a court "must include the Guidelines range in the array of factors warranting consideration," *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007), there need not be "extraordinary circumstances to justify a sentence outside [that] range," *Gall*, 128 S. Ct. at 595.  *See Kimbrough*, 128 S. Ct. at 577 (Scalia, J., concurring) ("[T]he district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines."); *see also United States v. Erpenbeck*, 532 F.3d 423, 445 (6th Cir. 2008) ("[A] district court's sentencing determination is reviewed under a deferential abuse of discretion standard." (citation omitted)).

Nevertheless, when sentencing a criminal defendant, a district court must "explain its reasoning to a sufficient degree to allow for meaningful appellate review." *United States v. Vowell*,

516 F.3d 503, 510 (6th Cir. 2008).  It must "set forth enough facts to [demonstrate] that it [has] considered the parties' arguments and had a reasoned basis for exercising its own legal decision making authority." *United States v. Garrett*, No. 06-4312, 2008 U.S. App. LEXIS 21157, at *5 (6th Cir. Oct. 3, 2008); *see also Vonner*, 516 F.3d at 392 393 (Martin, J., dissenting) ("I want to focus on the need for district courts to adequately explain the reasons for a given sentence ... regardless of whether the sentence is above, below, or within the proposed guidelines range, so that we, as an appellate court, may adequately review [those] sentences.").

**ANALYSIS**

### A. Stern's Total Offense Level Under the Guidelines

The Court finds that Stern's base offense level under the Guidelines is 18.  *See* U.S.S.G. § 2G2.2(a)(1).  The Court applies a two level upward adjustment for distribution, *see* U.S.S.G. § 2G2.2(b)(3)(F), a four level upward adjustment based on the quantity of child pornography,[4] *see* U.S.S.G. § 2G2.2(b)(7)(C), and a two level increase for use of a computer, *see* U.S.S.G. § 2G2.2(b)(6). Accordingly, Stern's adjusted offense level is 26.  The Court also finds that a full three level adjustment for acceptance of responsibility, for which the Government moved, is warranted. Consequently, the Court will apply a three level downward adjustment.  *See* U.S.S.G. § 3E1.1(a) & (b).  Stern's total offense level is thus 23.

The Court further finds that Stern's criminal history category is I, resulting in an advisory range of imprisonment for between 46 and 57 months.  Both parties have expressly agreed with these calculations.

---

[4] Stern possessed in excess of 300 images, but fewer than 600 images.  *See* U.S.S.G. § 2G2.2(b)(7)(C).

**B. No Downward Departure is Appropriate Under the Guidelines**

The Court finds that there is no Guidelines-based ground for departure from the 23/I Guidelines range.  Indeed, it appears that the Court would have no authority to authorize such a departure even if sought.  As Chief Judge Joseph Bataillon of the United States District Court for the District of Nebraska has ably explained, crimes against children are classified differently than other offenses:

> The court's authority to downwardly depart is controlled by the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (the "PROTECT Act").  That Act amended 18 U.S.C. § 3553(b) to restrict the authority of the district courts to depart from the sentencing Guidelines in sexual offense and child pornography cases. 18 U.S.C. § 3553(b)(2).  In cases involving child crimes and sex offenses, downward departures can only be granted for a mitigating circumstance that has been affirmatively and specifically identified as a permissible ground for departure, that has not adequately been taken into consideration by the Sentencing Commission in formulating the Guidelines, and that should result in a different sentence. U.S.S.G. § 5K2.0(b)(1). The PROTECT Act of 2003 eliminated judicial departures for all reasons except those specifically authorized in Chapter Five, Part K, of the Guidelines Manual.
>
> Also, post-PROTECT Act, downward departures for Aberrant Behavior under U.S.S.G. § 5K2.20, and for diminished capacity under § 5K2.13 are specifically disallowed for child crimes or sexual offenses. Accordingly, in determining a Guidelines sentence, the court is not authorized to grant a downward departure.

*Baird*, 2008 U.S. Dist. LEXIS 2338, at *11-12.  Accordingly, this Court applies no departure under the Guidelines.  The term of imprisonment recommended by the advisory sentencing Guidelines thus remains at between 46 and 57 months.

**C. Analysis of the § 3553(a) Factors**

The Court must next weigh the seven factors enumerated in § 3553(a) to determine the sentence that is "sufficient, but not greater than necessary," to achieve the sentencing goals outlined in that statute. *Gall*, 128 S. Ct. at 597 (citing § 3553(a)). First, the Court is under "a broad command to consider the nature and circumstances of the offense and the history and characteristics of the defendant." *Id*. Second, the Court must consider "the general purposes of sentencing." A sentence imposed by the court must: "(A) … reflect the seriousness of the offense … promote respect for the law … and provide just punishment for the offense." *Id*. It must also "(B) … afford adequate deterrence to criminal conduct [and] (C) … protect the public from further crimes of the defendant." *Id*. Finally, it must "(D) … provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Third, the Court must weigh "the kinds of sentences available." *Id*. Fourth, the Court must refer to "the Sentencing Guidelines." *Id*. Fifth, the Court should refer "to any relevant policy statement issued by the Sentencing Commission." *Id*. Sixth, the Court must consider "the need to avoid unwarranted sentence disparities." *Id*. Last, the Court must consider "the need to provide restitution to any victim." *Id*. As explained below, the balance of these factors leads this Court to conclude that 12 months and 1 day is the appropriate sentence "sufficient, but not greater than necessary," to achieve the sentencing goals outlined in § 3553.

1. The Nature and Circumstance of the Offense and the Characteristics of the Defendant

*A. The Nature and Circumstance of the Offense*

The Court finds that possession of child pornography is an exceedingly serious offense, among the most serious class of offenses that do not involve the direct use of violence or coercion

-8-

on the part of the perpetrator. *See, e.g.*, *United States v. Holtz*, 285 Fed. Appx. 548, 553 (10th Cir. 2008) ("Possession of child pornography is a serious matter. It's not just the possessing of it; it's what is done to innocent victims worldwide in order to allow adults to knowingly possess it."). The Court, accordingly, emphasizes that Stern's crime is a sexual exploitation offense – criminalizing the possession of child pornography is a necessary complement to laws banning production of such items, much of which occurs outside the jurisdictional reach of the Federal Courts.

Laws criminalizing the possession of child pornography are in place to reduce the market for exploitation of the children that are severely victimized by this crime. *United States v. Duhon*, 440 F.3d 711, 719 (5th Cir. 2006) ("Possession of child pornography is not a victimless crime. A child somewhere was used to produce the images downloaded . . ., in large part, because individuals like [the defendant] exist to download the images.") (quoting *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005)). This crime shocks the conscience: "Children are exploited, molested, and raped for the prurient pleasure of [the defendant] and others who support suppliers of child pornography." *United States v. Goff*, 501 F.3d 250, 259 (3d Cir. 2007); *see also United States v. Weis*, 487 F.3d 1148, 1153 (8th Cir. 2007) ("[D]efendants guilty of receiving child pornography victimize the children depicted in the pictures.)*; see generally* Professor Audrey Rogers, *Child Pornography's Forgotten Victims*, 28 Pace L. Rev. 847 (2008) (refuting courts which have implied that child pornography is a victimless crime). The written word seems inadequate to describe the horrors of this crime.

Although it is never easy to differentiate between various levels of unconscionable conduct, it is still true that "possession of pornography is the least serious of the crimes on the continuum of conduct-from possession to distribution to production to predatory abuse-that exploits children."

*Baird*, 2008 U.S. Dist. LEXIS 2338, at \*13; *United States v. Goldberg*, No. 05-CR-0922, 2008 U.S. Dist. LEXIS 35723, at \*14-15 (N.D. Ill. Apr. 30, 2008) ("It does sustain a market for child pornography, of course, but that market is unfortunately there regardless of what may happen to [this defendant].").[5]  The individual who possesses child pornography, while demanding punishment, is "considerably less culpable than a producer or distributor of the exploitative materials and is a marginal player in the overall child exploitation scheme." *Id.*; *see also United States v. Camiscone*, No. 5:04-CR-00594 (N.D. Ohio Sept 16, 2008); *United States v. Honnold*, No. 5:05-CR-0492 (N.D. Ohio Feb 23, 2006).  Here, Stern "never possessed [child pornography] in order to entice a child ... never produced any of the images ... never had any improper conduct with an actual child ... [and] never molested any child." (Doc. 12 at 10.)  Indeed, "there is no evidence, direct or indirect, that the defendant ever engaged in the photography of any minors engaged in sexual conduct" or that "the defendant ever engaged in direct or indirect pedophile conduct." *Honnold,* No. 5:05-CR-0492, at 4; *cf. United States v. Gleason*, 277 Fed. Appx. 536, 540 (6th Cir. 2008) (affirming the sentencing decision of a district court that had imposed an upwards variance in part based on conduct indicating the potential for direct pedophiliac conduct).  There is also no evidence that Stern regularly traded the images he downloaded.

Finally, the files on Stern's computer, while profoundly disturbing, were not as violent as the images found on the computers of many other defendants the Court has encountered in these cases. *Cf. United States v. Reiner*, 468 F. Supp. 2d 393, 398 (E.D.N.Y. 2006) (cataloguing the various

---

[5] The Court is also forced to note the somewhat limited impact of domestic prosecution for a fundamentally international crime.  Although it is still critical to deter this aberrant conduct in the United States, no court should be deluded into believing that limiting domestic consumption alone can eradicate the international market for child pornography.

violent images, movies, and stories found on the defendant's computer). This suggests that Stern should be punished less severely than those defendants.

*B. The Characteristics of the Defendant*

i. Stern's Age

The Court finds several strongly mitigating factors when it considers the individual characteristics of this particular defendant. Most critically, it takes note that Stern was 14-years old when he began to view pornographic images and, at that time, he was looking at images of girls his own age.[6] There is, thus, a fundamental difference between Stern, whose conduct and apparent resultant addiction began during adolescence, and the other defendants convicted of similar crimes who have been sentenced by this Court, other courts in this district, and other courts in the federal system. *Compare United States v. Polito*, 215 Fed. Appx. 354, 357 (5th Cir. 2007) (per curiam) (upholding a sentence of probation when use began during adolescence), *with United States v. McElheney*, 524 F. Supp. 2d 983, 997 (E.D. Tenn. 2007) ("Typically, defendants in [child pornography] cases are first offenders, highly educated, <u>middle aged</u>, with solid work histories.") (emphasis added); *see also Gall v. United States*, 128 S. Ct. 586, 601 (2007) ("[Y]outh is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage." (citation omitted)). Indeed, the Court has conducted a review of the scientific literature in this area and believes there is compelling evidence that the

---

[6] The need to protect this crime's victims is not lessened by the perpetrator's age. That being said, the courts have a radically different statutory scheme in place to punish 14-year olds who are looking at pictures of other 14-year olds, as this behavior is fundamentally different in kind than a 40-year old who looks at 14-year olds. The 14-year old is acting on normal impulses in an unacceptable manner (and may well be unaware of the impact of his crime), whereas the 40-year old is acting on deviant impulses and is expected to understand the terror that this crime inflicts upon its victims.

judicial system's longstanding principle of treating youth offenders differently than adult offenders is justified in part based on the unformed nature of the adolescent brain.  *See, e.g.*, National Institute of Health Publication 4929, *The Teenage Brain: A Work In Progress* (2008).

This Court does <u>not</u> suggest that this difference removes all culpability, but does believe that there are critical distinctions between Stern and the typical defendant.  As the Supreme Court has explained:

> [A] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young.... Even the normal 16-year-old customarily lacks the maturity of an adult.  It has been noted that adolescents are overrepresented  statistically in virtually every category of reckless behavior.... [J]uveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure.  This is explained in part by the prevailing circumstance that juveniles have less control, or less experience with control, over their own environment.... [T]he character of a juvenile is not as well formed as that of an adult.  The personality traits of juveniles are more transitory, less fixed.

*Roper v. Simmons*, 543 U.S. 551, 570 (2005).  This Court thus considers Stern's age at the time he began his use a factor that weighs heavily in favor of a deviation under § 3553(a).  *Accord. Polito*, 215 Fed. Appx. at 357; *see also Honnold*, No. 5:05-CR-0492 (noting that defendant's use of <u>legal</u> pornography began at a young age); *cf. United States v. Davis*, 537 F.3d 611, 615 (6th Cir. 2008) (finding that a downward variance can be appropriate when a defendant is particularly old); *cf. also, e.g.*, *Prisel* 2008 U.S. App. LEXIS 23648, at *28-30 (affirming a sentence that did not include a term of imprisonment for possession of child pornography, although use began during adulthood); *Camiscone*, No. 5:04-CR-00594 (sentencing defendant to probation, although use began as an adult); *United States v. Rausch*, 570 F. Supp. 2d 1295 (D. Colo. 2008) (same).

On the other hand, however, it is notable that Stern's criminal activities were not confined to his adolescence. Stern did not stop purchasing or viewing pornography until his arrest at age 22, 8 years after his criminal activity first began. Notwithstanding Stern's age, the Court cannot ignore the length of time over which his illegal conduct continued. So too, the Court cannot ignore the fact that, as Stern matured, he not only did not cease his activities, but actually narrowed the focus of his pornographic images to only child pornography. Thus, while there is a difference in culpability between one who <u>starts</u> viewing child pornography as an adult and one who does not <u>stop</u> viewing such material, and while that difference warrants consideration, that consideration is not unlimited.

### ii. Stern's Post-Arrest Conduct

Stern's conduct since his arrest also weighs heavily in favor of a downward variance. *See United States v. Gleason*, 277 Fed. Appx. 536, 540 (6th Cir. 2008) (quoting with approval a district court that had "certainly departed downward when people have shown extraordinary post-offense or post-conviction rehabilitation."). Stern graduated from Kent State a year after his arrest. The Court finds it noteworthy and predictive of Stern's future behavior that he committed himself to achieving this productive goal irrespective of the immense and deserved public shame that followed his arrest. *Accord. Polito*, 215 Fed. Appx. at 356 (affirming a district court's refusal to award imprisonment when defendant completed college in the substantial time between initial arrest and formal charges).[7]

Second, Stern sought therapy well in advance of being charged with any crime. Although this factor does not weigh nearly as heavy in Stern's favor as it would had he sought treatment prior

---

[7] Indeed, Stern is <u>more</u> compelling than Polito in this regard, as Stern was able to successfully complete school without interruption. Polito, on the other hand, dropped out of Louisiana State University and later completed his schooling at McNeese State University. *Polito*, 215 Fed. Appx. at 356.

-13-

to his arrest, the Court nonetheless considers it a positive indication of Stern's commitment to refraining from future criminal conduct. *Accord. Polito*, 215 Fed. Appx. at 356 (finding the same).

Third, Stern has been employed for over a year as a computer game designer and is described as a highly talented employee. He has maintained this job despite his conviction for this offense and the looming threat of punishment from this Court. The Court finds this indicative of Stern's current ability to contribute to society, as well as his commitment to leading an exemplary life from this point forward. *But cf. United States v. Vela-Ontiveros*, No. 08-50030, 2008 U.S. App. LEXIS 22030, at *3 (5th Cir. Oct. 21, 2008) ("[The defendant] was well educated and had been a school teacher, but [the district court] determined that this was not a mitigating circumstance because [the defendant] had the privilege of being well educated and was capable of making good choices, but instead had made very bad decisions.").

Fourth, Stern has maintained normal and productive relationships with his family, his friends, and even a girlfriend. This is likewise compelling; the Court believes that, particularly in contrast to the description of Stern's social behavior while engaged in his criminal activity, this indicates a great likelihood that Stern will continue to be a positive and law-abiding member of society.[8]

The Court is mindful of its obligation to determine whether Stern's behavior is merely a pretextual effort to avoid a harsher sentence. *See United States v. Beach*, 275 Fed. Appx. 529, 533 (6th Cir. 2008). The Court concludes that it is not. As an initial matter, much of Stern's behavior

---

[8] During the initial sentencing hearing, there was extensive testimony regarding Stern's depressive and anti-social behavior while engaged in his criminal activity. Stern presented experts who contended that this predated, and indeed caused, Stern's criminal activity, whereas the Government argued that Stern's depression and anti-social tendencies were the result of that activity. The Court does not find it necessary to resolve these conflicting viewpoints, both of which seem plausible on the evidence presented. Whatever the cause and effect, indeed, whether there was cause and effect, is not relevant to the Court's determination of Stern's appropriate sentence in light of all of the other factors considered by the Court.

predates the criminal charges against him. *See Gall* 128 S. Ct. at 600-01("Compared to a case where

the offender's rehabilitation occurred after he was charged with a crime, the District Court here had

greater justification for believing Gall's turnaround was genuine, as distinct from a transparent

attempt to build a mitigation case.").

There are, moreover, other factors that support this conclusion.  Based on the Court's

experience with scores of past defendants, it finds Stern's professions of remorse and change

credible, if obviously well-coached.  (*See, e.g.*, Doc. 14 at 46 ("I want to explain who I am today.

Not to excuse my actions, but to show just how much change has occurred in two years. . .""));

*accord., e.g.*, *United States v. Howe*, 543 F.3d 128, 135 (3d Cir. 2008) ("[T]he task of discerning

sincerity lies squarely with the district judge, who observes first-hand the words as they are

communicated live." (citing *United States v. McIntosh*, 198 F.3d 995, 1001 (7th Cir. 2000))).

Furthermore, the Court also recognizes that Stern has maintained this socially productive and well-

adjusted life over the past three years, a relatively long period of time.  *Accord. United States v.*

*Roberson*, 573 F. Supp. 2d 1040, 1050 (N.D. Ill. 2008) ("[D]efendant's recent conduct is consistent

with his representations to the court that he wants to set his future on a law-abiding course.").

Finally, Stern's therapist states that Stern recognizes the wrongfulness of his conduct, has insight into

the harm it caused, and possesses genuine remorse.[9]  The Court finds that this testimony supports

a downward variance, particularly given the Court's opportunity to observe other, more empirical,

---

[9] Although the Court notes the positive testimony of Stern's independently financed
therapists, the Court weighs this factor only in relationship to other defendants with the financial
resources to seek such treatment.  The Court is no more or less inclined to grant Stern's request
for a variance than the Court would be to grant a variance to a defendant who could present only
the more limited testimony of court-appointed professionals.

measures of change on the part of Stern.  Considering all of these factors together, the Court finds

it likely that Stern's turnaround is both genuine and permanent, rather than pretextual or transitory.

### C. The Court's Findings With Respect to § 3553(a)(1)

Evaluating the first of § 3553(a)'s factors, the Court finds Stern's crime abominable, but

finds Stern's personal circumstances compelling.  *Accord. United States v. Gardellini*, 545 F.3d

1089, -- (D.C. Cir. 2008) ("[T]he district court at sentencing must consider and balance a number

of factors – not all of which will point in the same direction.").[10]  Stern began his use of child

pornography by looking at girls his own age, sought help to prevent future criminal activity prior to

being charged with any crime, and is now a law-abiding and productive member of society.  *Accord.*

*United States v. Collington*, 461 F.3d 805, 809 (6th Cir. 2006) ("[T]he district court ... [emphasized

that the sentence was] sufficient enough to reflect the crimes committed while allowing for the

possibility that [the defendant] ... may go on to a productive life in society.").  The Court concludes

that Stern has made genuine efforts to turn around his life and that such efforts, in light of the above

mentioned factors, weigh in favor of a variance.  *Accord. Roberson*, 573 F. Supp. 2d at 1050

(balancing positive personal characteristics against the extreme seriousness of the offense).

### 2. The Purposes of Sentencing

Federal sentencing law generally asks a court to consider retribution, deterrence,

incapacitation, and rehabilitation.  Retribution imposes punishment based on moral culpability,

whereas deterrence, incapacitation, and rehabilitation are directed towards society's future security.

---

[10] The Court notes, however, that unlike many other defendants appearing before it, Stern does not point to any childhood trauma (e.g., sexual abuse, death of a parent, etc.) that might explain his resort to dangerous and deviant behavior.  Indeed, by all accounts, Stern had a nurturing and caring family and was provided with many opportunities that other defendants regularly before this Court simply have never had.

*United States v. Cole*, No. 5:08-CR-00327, 8-14 (N.D. Ohio Dec 11, 2008) (thoughtfully considering the goals of criminal punishment).  Each of these considerations counsels in favor of Stern's sentence.

> *A. The Sentence Must Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment*

As this Court has already stated, there is no question that Stern has committed a serious crime.  In addition to the conclusions above, the Court adopts in all respects the findings of its sister district court:

> Trading in child pornography is a very serious offense. The victims are the children themselves who are photographed engaged in conduct that will probably cause them life-long harm and may make still more victims of their eventual offspring. Even though the offending materials are easily available on the internet to persons with sufficient intelligence to put the internet to that use, it is essential that those who view and collect the images be punished and a severe punishment is necessary in the hope that such severe punishment, if well-published by the media, will curtail the use of the internet for that purpose and will eventually reduce the number of child-victims of such action. Thus ... [this] conduct requires penal sanctions.

*Honnold*, No. 5:05-CR-0492, at 6-7; *see also United States v. Duane*, 533 F.3d 441, 452 (6th Cir. 2008) (quoting with approval a district court's recognition that "there is a market for this stuff because people like [the defendant] acquire it, and that market drives victimization of these children.").  Because of people like Stern, there are thousands of:

> children that are involved in these videos and stills who have been victimized and whose lives have been wrecked beyond almost anyone's ability to find redemption. And that is what Congress was concerned about in enacting the penalty provisions for this law.  The idea is if you can dry up the market, then there will not be a need for the product, and perhaps the industry will dry up.... [T]o put [the defendant] on probation, given the offense, would minimize the significance of the offense itself.

*United States v. Huckins*, 529 F.3d 1312, 1316 (10th Cir. 2008) (quoting the district court).

Accordingly, the Court reiterates that the seriousness of the offense weighs heavily in favor of a substantial punishment.

Respect for the law is promoted by punishments that are <u>fair</u>, however, not those that simply punish for punishment's sake. *United States v. Cernik*, No. 07-20215, 2008 U.S. Dist. LEXIS 56462, at *25 (E.D. Mich. July 25, 2008) ("[A] sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." (citing *Gall*, 128 S. Ct. at 599)). There is no reason to believe that respect for the law will increase if a defendant who deserves leniency is sentenced harshly any more than there is reason to believe that respect for the law will increase if a defendant who deserves a harsh punishment receives a slap on the wrist. *See United States v. Zavala*, No. 07-14851, 2008 U.S. App. LEXIS 24168, at *8-9 (11th Cir. Nov. 25, 2008) ("[A]ny higher sentence would promote disrespect for the law.") (quoting the district court); *United States v. Ontiveros*, 07-CR-333, 2008 U.S. Dist. LEXIS 58774, at *6 (E.D. Wis. July 24, 2008) ("[A] sentence that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect [for the law]."). Similarly, a just punishment for Stern is one that balances the severity of his crime with the individual characteristics of Stern that counsel in favor of leniency. Alternately, however, the Court believes that this crime must be punished with a term of imprisonment, but not a lengthy one. *Accord*. *Huckins*, 529 F.3d at 1316; *Honnold*, No. 5:05-CR-0492, at 6-7.

### B. The Sentence Must Afford Adequate Deterrence

Child pornography must be universally condemned, and even a defendant with highly compelling personal characteristics should not be fully excused from such a heinous crime. *Accord*. *United States v. Phinazee*, 515 F.3d 511, 516 (6th Cir. 2008) ("[G]eneral deterrence is an acceptable basis for sentencing." (citation omitted)); *United States v. McIlrath*, 512 F.3d 421, 423 (7th Cir.

-18-

2008) (Posner, J.) ("[W]e as a society have found, unfortunately, no better way to deal with this serious, serious problem other than to incapacitate or remove individuals from the community for a period of time not only as a form of punishment but a form of deterrence not only to you personally but deterrence to others who may find themselves similarly situated.") (quoting the district court); *but see Goldberg*, 2008 U.S. Dist. LEXIS 35723, at *15 ("Importantly, much of the market [for child pornography] is driven by compulsive behavior and caused by deviance; whether such behavior can be deterred is doubtful."). That said, the sentence contemplated by the Guidelines is greater than necessary to achieve this purpose, *in this case. Accord. United States v. Carty*, 520 F.3d 984, 990 (9th Cir. 2008) (en banc) (affirming a district court's finding that a below guidelines sentence could "afford adequate deterrence to others."); *cf. United States v. Desmond*, No. 05-CR-792-4, 2008 U.S. Dist. LEXIS 19602, at *9-10 (N.D. Ill. Mar. 11, 2008) (noting that a below guidelines sentence may in some cases provide <u>more</u> deterrence); *cf. also Gardellini*, 545 F.3d at -- ("[T]he Government's argument based on deterrence alone is flawed because it elevates one § 3553(a) factor – deterrence – above all others.").

The Court is mindful that individual factors unique to Stern limit the specific deterrent value of any sentence. In this regard, the Court leans heavily on its finding that Stern's criminal activity began when he was a 14-year old boy looking at pictures of 14-year old girls. The Court does not believe that the parents of future 14-year olds, in considering how closely to monitor their children's use of the internet, will be any less chastened by this Court's sentence merely because it departs from the Guidelines.[11] *Accord. Baird*, 2008 U.S. Dist. LEXIS 2338, at *20 ("The mere fact of [the

---

[11] It does not appear, moreover, that a longer sentence for the now-25-year old Stern would be a more effective deterrent to other 14-year olds. Indeed, to deter adolescents directly, other adolescents should be appropriately prosecuted as adolescents and the fact of those prosecutions must be used as educational tools to their peers. The threat of punishment in the

defendant's] prosecution deters others from engaging in this sort of conduct, and a sentence of incarceration will act as a further deterrent to others contemplating such activity.  The value of any longer sentence as a deterrent, over and above these other factors, would be marginal.").

>   C.   The Sentence Must Protect the Public from Further Crimes of the Defendant

There is no suggestion that this defendant need be incapacitated.  The Court finds it critical that all psychiatrists and psychologists who have examined Stern have found him to pose an exceedingly low risk of recidivism.  *Accord. United States v. Smith*, 275 Fed. Appx. 184, 188 (4th Cir. 2008) (per curiam) (finding a below Guidelines sentence appropriate in part because of the defendant's "low risk of recidivism"); *United States v. Martin*, 520 F.3d 87, 90 (1st Cir. 2008) (same); *Camiscione*, No. 5:04-CR-00594, at 5 (same).  While the Court is mindful that those who have engaged in this criminal behavior in the past are always susceptible to it in the future, there are none of the factors present that typically have lead courts to impose longer sentences in order to incapacitate a defendant.  *See, e.g.*, *United States v. Tyler*, 271 Fed. Appx. 505, 514 (6th Cir. 2008) ("[The district court found it] important to incapacitate [the defendant] because of his violent propensities that were testified to at trial."); *United States v. Bowles*, 260 Fed. Appx. 367, 370 (2d Cir. 2008) ("[T]he problems with his sexual deviance, perception that the children enjoyed the contact, long-term alcohol and drug abuse and mental illness, as well as a limited support  network certainly formed a strong and reasonable basis for the sentence.").

---

distant future, no matter how severe that threat may be, is an inadequate means to deter adolescent behavior.

The Court further finds that, for this defendant, careful monitoring is sufficient to protect society from potential future crimes.[12]  When defendants like Stern realize that their conduct "is not anonymous, that it carries substantial penalties, and that even simply viewing it does substantial harm to children, first-time offenders [with no previous history of criminal or abusive conduct] are unlikely to repeat."  *Ontiveros*, 2008 U.S. Dist. LEXIS 58774, at *18-19.  After considering the nature of the defendant as set forth in the presentence report, the psychologist's testimony, and the letters of support for the defendant, the Court finds that a sentence of 12 months and 1 day is very likely sufficient to prevent Stern from engaging in future criminal conduct of this type.

> *D.  The Sentence Must Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.*

There is no suggestion that this defendant would be more fully rehabilitated within the prison system.  Indeed, there is great reason to think that this defendant's rehabilitation might be negatively impacted by an excessively long prison stay.  *Cf. United States v. Moreland*, 568 F. Supp. 2d 674, 687 (S.D. W.Va. 2008) ("[The defendant] has made both good and bad decisions in his life. He has not, however, demonstrated the pattern of recidivism or violence that would justify disposal to prison for [such a lengthy period]. One of the goals of sentencing remains the rehabilitation of convicts. I find that [the defendant] has an excellent chance of turning his life around after he completes his substantial sentence.")  One psychologist, for example, stated that he "would be concerned that for [Mr. Stern] to be sentenced to prison potentially has the ability to undo much of what he has done

---

[12] This is particularly true with respect to a conviction for possession of child pornography.  It would be quite difficult for any defendant who is complying with a rigorous monitoring program to successfully hide the possession of pornography.  This is in stark contrast to a defendant who poses an immediate risk of violence, for whom the mere threat of ex-post punishment is, by definition, insufficient to protect society.

to this point. . . [I]t's hard for me to imagine in my mind that there would be anything positive at all that would occur by him being sentenced there." *Cf. United States v. Hawkins*, 380 F. Supp. 2d 143, 165 (E.D.N.Y. 2005), *aff'd*, 228 Fed. App'x 107 (2d Cir. 2007) (concluding that any incarceration "will in effect doom her. . . . Rehabilitation should not now be destroyed by wanton and unthinking application of mechanical rules for imprisonment.").

By all accounts, Stern is now a productive member of society, though prior to the past three years he exhibited various maladjustive behaviors in addition to his use of child pornography. There is the very real risk that placing such an individual into the prison system for the term urged by the Government would have long-term negative consequences for that defendant as well as society at large. *Accord. Camiscione*, No. 5:04-CR-00594, at 5 (finding that prison would harm, rather than help, in rehabilitation). This alone, of course, would not support the variance that the Court deems appropriate today. *Phinazee*, 515 F.3d at 517 ("Rehabilitation is but one factor."). The Court does give weight, however, to this factor's presence. *Accord. Martin*, 520 F.3d at 93 (affirming a below guidelines sentence when the district court based its determination in part on the defendant's capacity for rehabilitation).

The Court believes that prison will be a critical component of rehabilitation for this defendant in one important way. This defendant, although genuinely remorseful, shares many characteristics with other defendants that the court has seen over the years. Some non-trivial percentage of these defendants would have greatly benefitted from a firm "line in the sand" earlier in their lives. Allowing Stern to escape without any prison term might send the wrong message to Stern, who must fully internalize that even the slightest further criminal sexual activity will result in even more substantial incarceration. *Cf. Prisel*, 2008 U.S. App. LEXIS 23648, at *22 (affirming no

imprisonment when defendant was "unlike many of the other defendants in similar cases the court had seen, in that he would not benefit from incarceration.").

### 3. The Kinds of Sentences Available

In addition to imprisonment, half-way homes, home detention, community detention, and various forms of community service have all been weighed by this Court. The Court finds that, given the extreme nature of the defendant's crime, it must order a term of imprisonment. *Accord*. *Huckins*, 529 F.3d at 1316; *Honnold*, No. 5:05-CR-0492, at 6-7. The Court does believe that future restrictions on the defendant's behavior – i.e., monitoring of his personal internet use and psychological evaluations, reduce the need for a prison sentence in this case. Still, the Court believes that the broad publication that those who possess child pornography *will* be imprisoned can help reduce demand for child pornography and ultimately protect children in a way that a less extreme sentence simply cannot.

### 4. The Sentencing Guidelines

The Court "consults" and "takes into account" the Guidelines with reference to their original goals. The Guidelines were "developed to advance sentencing reform goals of reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparence of punishment." *Baird*, 2008 U.S. Dist. LEXIS 2338, at *15-16 (citing the United States Sentencing Commission, Fifteen Years of Guidelines Sentencing at 11-12 (Nov. 2004)). The Guidelines were carefully developed – the Commission employed a data-driven and empirical focus designed to reduce recidivism. *See id*. Because of the Guidelines' focus on data, they frequently "represent a reasonable estimation of a fair sentencing range." *Id*. at 16.

Sentencing for the exploitation of children under the Gridlines is quite different than sentencing for other offenses.  In part out of a concern born of the almost unthinkable nature of these crimes, "the Commission departed from past practices in setting offense levels for ... child crimes and sexual offenses." *Id*. at 17 (citing *Kimbrough*, 128 S. Ct. at 567).  Consequently, the Guideline ranges of imprisonment for possession of child pornography is a "less reliable appraisal of a fair sentence." *Id*.  (citing *Kimbrough*, 128 S. Ct. at 574); *see also, e.g.*, *United States v. Noxon*, No. 07-40152, 2008 U.S. Dist. LEXIS 87477, at *5-6 (D. Kan. Oct. 28, 2008) (same); *United States v. Grinbergs*, No.05-CR-232, 2008 U.S. Dist. LEXIS 91712, at *19-20 (D. Neb. Sept. 8, 2008) (same); *Ontiveros*, 2008 U.S. Dist. LEXIS 58774, at *13-14 (same); *United States v. Hanson*, 561 F. Supp. 2d 1004, 1011 (E.D. Wis. 2008) (same); *United States v. Shipley*, 560 F. Supp. 2d 739, 744 (S.D. Iowa 2008) (same); U*nited States v. Malone*, No. 04-80903, 2008 U.S. Dist. LEXIS 13648, at *8-9 (E.D. Mich. Feb. 22, 2008) (same).  One Court put it simply – in many cases the Guidelines recommendations for cases involving child pornography are "illogical." *Hanson*, 561 F. Supp. 2d at 1011 (citation omitted).

The Court is particularly troubled that the Guidelines for sentencing those who possess child pornography "have been repeatedly raised despite evidence and recommendations by the [United State Sentencing] Commission to the contrary." *Hanson*, 561 F. Supp. 2d at 1009 (citation omitted); *Grinbergs*, 2008 U.S. Dist. LEXIS 91712, at *19-20.  Indeed, "[t]he most recent changes [to the Guidelines] apparently came from two lawyers in the Justice Department who persuaded a novice Congressman to add them to the popular Amber Alert bill." *Hanson*, 561 F. Supp. 2d at 1009 (citation omitted).  For the above reasons, and for the reasons fully set forth in *Hanson* and *Baird,* this Court concludes that "the guideline provisions relating to child pornography offenses of this

-24-

nature do not reflect the kind of empirical data, national experience, and independent expertise that are characteristic of the Commission's institutional role." *Ontiveros*, 2008 U.S. Dist. LEXIS 58774, at *20.

Nevertheless, the Court has weighed the sentence suggested by the Guidelines in light of the facts of this particular case.[13] It is clear that, in this case, "factors that are present in almost all current child pornography cases, i.e., use of a computer, number of depictions, operated to increase the guideline range significantly ." *Id*. In light of the "illogical" operation of the Guidelines as applied to Stern, the Court will not impose the sentence that they suggest.

### 5. Any Pertinent Policy Statement.

There does not appear to be any such statement.

### 6. The Need to Avoid Unwarranted Sentencing Disparities

The Court has carefully considered an extremely wide variety of opinions from across the country as well as the National Guideline Statistics.[14] *See United States v. Newell*, 35 Fed. Appx. 144, 145 (6th Cir. 2002) ("[The Guidelines are intended] to eliminate unwarranted sentence disparities <u>nationwide</u>.") (emphasis added). The Court is deeply troubled by its findings: "anyone

---

[13] The Court struggles with the statement, made by a number of courts, that these Guidelines should be given "less deference than ... empirically-grounded guidelines." On one hand, it is clear that empirically-grounded guidelines deserve deference in part because they can illustrate to a district court that its experience with a particular type of crime is not representative, or that the sentencing court's instinct as to the sentence necessary to prevent future crime is incorrect. On the other hand, Congressional recommendations reflect equally valid societal judgements. The Court believes, however, that this latter type of judgement, because it must necessarily be made in the abstract, may provide either more or less guidance on the facts of a *particular* case.

[14] In 2007, sentences under 2G2.2 included a downward variance more than 33% of the time. *See Sourcebook of Federal Sentencing Statistics,* on-line at http://www.ussc.gov/ANNRPT/2007/SBTOC07.htm.

seriously concerned about federal sentencing disparities [must begin by] taking a very close look at federal child porn cases."  Professor Douglas A. Berman, *Is There an Ivy-Leaguer Exception to Federal Child Porn Charges?* (October 22, 2008), on-line at http:// sentencing.typepad.com.  Based on the Court's review of the case law, it is clear that "one would be hard pressed to find a consistent set of principles to explain exactly why some federal child porn defendants face decades in federal prison, some face many years in federal prison, while others only end up facing months." *Id*.  This Court is "struck by the inconsistency in the way apparently similar cases are charged and sentenced." *Goldberg*, 2008 U.S. Dist. LEXIS 35723, at *5-6 (considering nearly two-dozen cases).

In short, the national sentencing landscape presents a picture of injustice.  In the absence of coherent and defensible Guidelines, district courts are left without a meaningful baseline from which they can apply sentencing principles.  The resulting vacuum has created a sentencing procedure that sometimes can appear to reflect the policy views of a given court rather than the application of a coherent set of principles to an individual situation.  Individual criminal sentences are not the proper forum for an expansive dialogue about the principles of criminal justice.  Such conversation, though vital, should not take place here – lives are altered each and every time a district court issues a sentence: this is not a theoretical exercise.  Yet, this Court is mindful of the appropriate scope of its authority – it must take the law as it finds it.

The Court, accordingly, has attempted to ensure that its sentence avoids unwarranted sentencing disparities to the greatest degree possible while still hewing to its view that this individual defendant must be punished with a term of imprisonment.  The Court acknowledges that the closest factual analogue to this case resulted only in probation.  *See Polito*, 215 Fed. Appx. at 356-57.

Indeed, the Fifth Circuit affirmed that sentence on facts similar to the ones currently before this

Court:

> 1) A substantial amount of time had passed between arrest and sentencing.
>
> 2) Both defendants were arrested while in college.
>
> 3) Neither defendant was found to be a further threat to the community.  In particular, neither defendant was found to pose any risk of direct harm to local children.
>
> 4) Both defendants were first-time offenders at the time of their arrest.
>
> 5) After the defendants were arrested, both conducted themselves very positively. Both sought mental health treatment, maintained employment, and avoided further legal difficulties.
>
> 6) In both cases, there was concern that a lengthy term of imprisonment would interrupt substantial positive gains in the defendant's mental health treatment.
>
> 7) Both defendants graduated college in the time since being arrested, but prior to being charged.  Polito dropped out of Louisiana State, but later enrolled in a smaller local college, from which he ultimately graduated.  Stern was able to continue at Kent State, from which he received a degree.

*Id*.  This Court, however, does not believe that the need to reduce individualized sentencing

disparities entirely trumps the Court's independent judgment.[15]  In this case, the Court believes jail

time is necessary, notwithstanding the contrary result in *Polito*.

Similarly, the Court has carefully considered a recent sentence of probation handed down

within the Northern District of Ohio.  *See Camiscione*, No. 5:04-CR-00594.  Five critical distinctions

separate *Camiscione* from the instant case and *Polito*, some of which present a <u>less</u> compelling

argument for leniency towards Camiscione than towards Stern or Polito:

---

[15]The Court also recognizes that no written opinion can fully capture the individual characteristics of a given defendant and that certain critical details may not have been reported by the Fifth Circuit.  *Accord Goldberg*, 2008 U.S. Dist. LEXIS 35723, at *5 ("[N]o two cases are identical and reported cases may not describe all salient facts.").

1) There was not a large elapse of time between arrest and sentencing.

2) Camiscione did not begin his criminal activities during adolescence.

3) Camiscione was not on his path to being a highly functioning and productive member of society.

4) On the other hand, Camiscione stopped purchasing (but not viewing) child pornography prior to his arrest.

5) The court's decision was influenced by its concern that Camiscione would be abused in prison.

*See id.* Although it seems that Camiscione was not a substantially more compelling defendant than Stern or Polito, the Court does not believe that a sentence of 12 months and 1 day creates an unreasonable disparity in light of its independent consideration of the § 3553(a) factors.

Finally, the Court takes particular note of a case within this district that helps define what this Court believes to be the upper acceptable boundary for Stern's sentence. *See Honnold*, 5:05-CR-0492. Unlike Stern, Polito, or Camiscone, Honnold was charged with both possessing and distributing child pornography, thus triggering a five-year statutory minimum that is inapplicable to the instant case. Honnold's case also included none of the factors counseling for leniency of any of the previously discussed cases, save his status as a first-time offender and as an otherwise productive member of society. Honnold was, however, a band director who was well-known in his community and who worked with numerous adolescents. *Id*. at 5-6. The court found that this exposed Honnold to a particularly high degree of negative publicity and shame. *Id*. That court also relied upon the unanimous testimony from former students of Honnold, who certified that Honnold was a positive force in their lives. Nonetheless, Stern committed a lesser offense than Honnold and Stern has many factors counseling leniency that Honnold did not. It is clear to this Court that, in the interests of

-28-

avoiding unwarranted sentencing disparities, Stern must receive a meaningfully lower sentence than Honnold.

7. The Need to Provide Restitution to any Victims of the Offense

It is obviously not possible for Stern to provide restitution to his particular victims. Much of the *concept* of restitution, however, is still a factor in this case. The Court believes that Stern should make "restitution" in the form of community service to those who have suffered from similar crimes. To that end, the Court orders Stern to a term of 2 years community service, preferably assisting battered adult women in a program approved and supervised by the probation office who will be overseeing his lengthy term of suspension.

**CONCLUSION**

Stern has committed a serious crime and the Court finds it necessary to impose a term of imprisonment on him to make clear that this crime should not and will not go unpunished. The Court finds that Stern is a unique and exceptional defendant for whom the Guidelines are not appropriate. *Accord*. *Roberson*, 573 F. Supp. 2d at 1050 ("It is true that almost any [sentencing] factor, considered in isolation, may be made to appear positive or negative, when employed by a talented rhetorician. But that is ignoring the context, the totality of the circumstances.... [This sentence is justified by] the individual case and the individual defendant before [the court]."). Consequently, as will be confirmed by its formal Judgement, Stern shall be sentenced to the custody of the Bureau of Prisons to be imprisoned for a term of 12 months and 1 day.

**IT IS SO ORDERED.**

**s/Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: December 17, 2008**

-29-